JOURNAL ENTRY and OPINION
{¶ 1} This case is before the court on appeal from a judgment of the common pleas court in bifurcated proceedings (a) granting judgment to plaintiffs, following a bench trial, on plaintiffs' complaint and some of the defendants' counterclaims and (b) granting summary judgment for plaintiffs and third party defendants on defendants' remaining counterclaims and third party claims.
 {¶ 2} In their nine assignments of error, defendants Crestmont Cleveland Partnership ("CCP") and its individual partners argue that the trial court erred by (1) holding that plaintiffs Willow Park Convalescent Home, Inc. ("Willow") and its parent corporation, Royal Manor Health Care, Inc. ("Royal") did not materially breach their amended lease agreement with CCP; (2) holding that CCP tortiously interfered with a contract or business relationship of plaintiffs'; (3) awarding plaintiffs Abraham and Sally Schwartz ("the Schwartzes") specific performance of their option to purchase property from CCP; (4) reforming the terms of the option; (5) improperly valuing the assets subject to the option; (6) (7) awarding plaintiffs compensatory and punitive damages and attorney's fees; (8) granting summary judgment on all of CCP's "new" counterclaims; and (9) issuing findings of fact and conclusions of law in violation of Loc.R. 19.
 {¶ 3} For the following reasons, we reverse the judgment in favor of plaintiffs on their tortious interference claim and enter judgment for CCP on that claim. We also reverse the judgment in plaintiffs' favor on CCP's counterclaim for tortious interference with CCP's business relationship with Bank One, and remand for further proceedings on that claim. We affirm the remainder of the court's judgment.
 PROCEDURAL HISTORY {¶ 4} The complaint in this case was originally filed on August 8, 1995. An amended complaint was filed May 2, 1996. The amended complaint alleged that plaintiff Willow leased premises from defendant CCP pursuant to a written lease agreement dated April 1, 1988. There were various alleged amendments to the agreement, including one dated August 27, 1992 to which plaintiff Royal was a party. In addition, the complaint alleged that CCP granted the Schwartzes an option to purchase the property leased to Willow, including real estate, a certificate of need, assets and equipment.
 {¶ 5} Count one of the amended complaint alleged that the Schwartzes notified CCP that they were exercising their option, but that CCP told them the option was not in effect; plaintiffs demanded specific performance of the option. Count two asserted that the general partners of CCP advised plaintiffs on the correct method of complying with the lease, then claimed that plaintiffs breached the lease by doing what the partners had advised. Plaintiffs sought a declaratory judgment that they had not defaulted on their lease obligations and had the right to quiet enjoyment of the premises. Plaintiffs' third claim alleged that the individual general partners of CCP conspired to deny the Schwartzes their option rights by wrongfully declaring the lease to be in default. Fourth, plaintiffs claimed that the individual partners of CCP procured the breach of the contract relationship between CCP, Willow and Royal, without justification, and therefore tortiously interfered with the contract. Finally, plaintiffs claimed CCP charged plaintiffs for goods and services which were not actually provided in connection with renovations to the premises.
 {¶ 6} CCP and the general partners filed an amended answer and, in addition, a third amended and supplemental counterclaim against plaintiffs and third party defendants Bank One Cleveland, N.A., Bank One Trust Company, and Jan Petrik (collectively, the "Bank One defendants"). Counts I through X of the counterclaim alleged that plaintiffs breached the lease and an associated guaranty. Count XI demanded reformation of the option so that the option became exercisable only within the 180 days before the expiration of the lease agreement.
 {¶ 7} Counts XII and XIII of the counterclaim alleged that Bank One provided credit to plaintiffs knowing that to do so would cause a breach of plaintiffs' lease obligations. Counts XIV and XV claimed Bank One should be estopped from denying promises and representations it made to CCP on which CCP justifiably relied, while Count XVI asserted Bank One was unjustly enriched by CCP. Count XVII sought punitive damages from Bank One. Count XVIII claimed Bank One breached a contract with CCP by allowing liens to accrue on the property leased to plaintiffs.
 {¶ 8} Count XIX demanded compensatory damages from plaintiffs for breach of the lease. Count XX requested a declaratory judgment that CCP had not breached its agreements with Bank One. Count XXI claimed Bank One fraudulently refused to provide information to CCP. Counts XXII and XXIII alleged that plaintiffs intentionally induced Bank One to breach its agreements with CCP, and interfered with the business relationship between Bank One and CCP. Count XXIV claimed the Schwartzes should be personally liable for the actions of Willow and Royal, corporations they owned. Finally, Count XXV alleged that CCP was the third party beneficiary of a mortgage note and a security agreement entered into between Bank One and Willow, and was damaged by plaintiffs' breaches of those agreements.
 {¶ 9} The court bifurcated the proceedings so that trial would proceed first on the "original claims" and later on the "counterclaims/new claims relating to Def. Bank One." Plaintiffs subsequently withdrew the claims for conspiracy and fraud alleged in counts three and five of their amended complaint. Trial proceeded on the remaining claims.
 {¶ 10} The court entered a partial judgment for plaintiffs on February 9, 1998 following a bench trial. First, the court held that plaintiffs were entitled to specific performance of the option agreement. In addition, the court found plaintiffs did not substantially default on their obligations under the lease, and that CCP should be enjoined from "interference or harassment of plaintiffs." The court also found for plaintiffs on their claim for tortious interference with a contractual relationship. Finally, the court found "for plaintiffs on defendant's counter-claim."
 {¶ 11} The court ordered the parties to proceed with the sale of the property to the Schwartzes under the terms and conditions of the option. Although the court initially modified the manner in which the property was to be appraised from that described in the option agreement, it subsequently amended its order regarding the appraisals and reinstated a procedure "generally as described in paragraph 2 of the Option to Purchase." The court awarded plaintiffs $100,000 in compensatory damages, $200,000 in punitive damages, and attorney's fees to be determined at a later hearing.
 {¶ 12} CCP requested findings and conclusions which the court entered on March 23, 1998. The court found the following facts:
 {¶ 13} In April 1988, Willow and CCP entered into a fifteen year lease for certain assets, included all of the assets CCP had acquired from Rose Park Convalescent and Rehabilitation Center, Inc. CCP and the Schwartzes simultaneously entered into an option for the Schwartzes to purchase from CCP the assets which CCP leased to Willow. The option would be void "in the event that there has been a default in the terms and conditions of the Lease * * * and such default has not been cured on a timely basis in accordance with the terms and conditions of such Lease * * *."
 {¶ 14} By its terms, the option could be exercised "on or before the date which is one hundred eighty (180) days before the date of termination of the Lease." The court found no evidence of a mutual mistake with respect to this provision.
 {¶ 15} On July 5, 1995, Willow's parent corporation, Royal, sent a letter of intent to CCP offering to negotiate for the purchase of the leased assets. CCP rejected this offer.
 {¶ 16} On November 1, 1995, the Schwartzes gave CCP written notice that they were exercising their option. CCP repudiated this notice on November 16, claiming that the option was invalid, that there was an uncured default under the lease, and that the option had not been exercised in accordance with its terms and conditions.
 {¶ 17} Before November 1, 1995, CCP had given Willow written notice with respect to two alleged defaults. The first notice of default, for non-payment of the first month's rent, was rescinded after Willow provided proof that it had paid the rent. The second notice alleged that Willow was in default for failure to reimburse CCP for insurance premiums CCP had paid on Willow's behalf. Willow tendered payment of the insurance premiums "under protest." The court found the parties had orally agreed that CCP would pay the insurance premiums, so no additional amount had been due.
 {¶ 18} Between April and September 1997, CCP served a series of notices on Willow alleging various defaults. The court found there was no evidence that CCP was damaged by any of the alleged defaults. In addition, the court addressed each of the alleged defaults individually, and found either that there was no default or that the default had been timely cured. The court found that CCP had harassed Willow and the Schwartzes in an attempt to terminate the lease.
 {¶ 19} The court concluded that the option was valid and enforceable when the Schwartzes exercised it. It held that the letter of intent Royal submitted to CCP was not a counteroffer to the option and did not void it. The Schwartzes' notice of exercise of the option was timely and substantially complied with the terms of the option, creating a binding contract. The court held that this contract should have been performed within a reasonable time, which the court found to be 90 days from the Schwartzes' notice of exercise. The court found that the Schwartzes became equitable owners of the property as of that date, January 31, 1996. The court also held that CCP's later allegations of default did not void the Schwartzes' exercise of the option.
 {¶ 20} The court held the Schwartzes were entitled to specific performance of the option contract. Furthermore, the court found that because of CCP's delay, the Schwartzes were entitled to a credit on the purchase price in the amount of the rent they would have collected from the tenant, Willow, if the contract had been performed when it was supposed to have been performed.
 {¶ 21} The court found that CCP tortiously interfered with the prospective landlord-tenant relationship between the Schwartzes and Willow, as a result of which Willow lost revenues from the operation of an outpatient clinic in the amount of $100,000.
 {¶ 22} The court found no default by plaintiffs under the lease or guaranty and therefore entered judgment for plaintiffs on counts I through X of the counterclaim. The court also entered judgment for plaintiffs on count XI of the counterclaim, holding that reformation of the option was not appropriate because there was no mutual mistake as to when the option could be exercised.
 {¶ 23} CCP filed a notice of appeal from this decision on July 30, 1998. This court dismissed the appeal for lack of a final appealable order. We further denied reconsideration of this dismissal, finding that there remained unlitigated third party claims against the Bank One defendants, and unlitigated counterclaims against plaintiffs in Counts XIX and XXIV.
 {¶ 24} Plaintiffs then moved for summary judgment as to the unlitigated counterclaims. The Bank One defendants moved for summary judgment as to the third party claims. The court granted both of these motions. The court subsequently awarded plaintiffs attorneys' fees in the amount of $325,000, the amount the parties stipulated as the reasonable value of the attorneys' services.
 {¶ 25} The court entered a final judgment incorporating all of the above decisions. As part of that judgment, the court determined that the property subject to the option was properly appraised subject to the lease to Willow ("leased fee appraisal"), not at its full market value ("fee simple appraisal"). The court found that the purchase price the Schwartzes would pay was the average of the three leased fee appraisals, $5,150,000.
 {¶ 26} The Court ordered CCP to provide the Schwartzes with an accounting of rents received after January 31, 1996, the date the property should have been sold to the Schwartzes. The court determined that the Schwartzes would receive a credit on the purchase price for the full amount of that rent.
 {¶ 27} The court enjoined CCP from interfering with, harassing or otherwise disturbing Willow's quiet enjoyment of the leased premises, and awarded all plaintiffs $100,000 compensatory damages on the tortious interference claim, $200,000 on the claim for punitive damages, and attorney's fees of $325,000, plus interest.
 {¶ 28} The court entered "judgment" in favor of plaintiffs and against CCP on all of the counterclaims except "Counts XIX and XXIV, which counts remained unlitigated following trial herein." The court then awarded "summary judgment" for plaintiffs and against CCP on counterclaim counts XIX and XXIV, and for the Bank One defendants on the third-party claims.
 {¶ 29} CCP timely appealed from this judgment, Cuyahoga App. No. 81147. CCP subsequently filed another notice of appeal from an order denying its request for a hearing on a motion to show cause, Cuyahoga App. No. 81259. The two appeals were consolidated for briefing and argument.
 LAW AND ANALYSIS Appeal No. 81259 {¶ 30} CCP does not assign any error to the court's order denying its request for a hearing on its motion to show cause. Therefore, Appeal No. 81259 is dismissed.
 Appeal No. 81147 Partial Judgment Following Bench Trial.
 {¶ 31} CCP's first seven assignments of error address court rulings issued in connection with the bench trial.
Breach of the Amended Lease.
 {¶ 32} First, CCP claims the court erred by finding that Willow and Royal did not materially breach the amended lease agreement. CCP claims Willow and Royal breached the lease in several material respects, so the court should have allowed CCP to terminate the lease and void the Schwartzes' option.
 {¶ 33} CCP addresses five alleged breaches in this assignment of error. Its counterclaim alleged several additional breaches which the common pleas court also rejected. CCP asserts that it does not waive these arguments. Nonetheless, this court will disregard any alleged breach not argued separately in CCP's appellate brief. App.R. 12(A)(2).
 {¶ 34} CCP claims the court should have held that Willow breached the lease by failing to pay rent after December 2001. This issue did not even arise until long after the trial was concluded, so obviously, it was not raised in the complaint or counterclaim and it was not decided by the common pleas court at trial. In fact, CCP never even argued to the common pleas court that the failure to pay rent was a breach of the lease. Instead, CCP asserted in a motion to show cause that the failure to pay rent was a violation of a court order to maintain the status quo.
 {¶ 35} In light of the court's final order requiring CCP to make an equitable accounting of rents to the Schwartzes and to credit against the purchase price under the option the full amount of the rent received pursuant to the lease after January 31, 1996, CCP has not been harmed by Willow's alleged failure to pay rent after December 2001. We will not consider the other relief demanded by CCP now, because CCP did not seek that relief in the common pleas court.
 {¶ 36} The other four alleged breaches as to which CCP claims error were actually raised and decided in the common pleas court after trial. The common pleas court found that "there was no evidence presented establishing or purporting to establish that CCP ever suffered any damage, injury, or material or actual loss or impairment of any kind as a result of the various alleged breaches of the lease." We must be guided by the presumption that this factual finding is correct. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77. CCP claims (without elaboration) that the alleged breaches were "material", but it does not contradict the court's finding that it was not harmed. Therefore, we are bound by this finding.
 {¶ 37} Under the analysis set forth in the Restatement of the Law 2d, Contracts, section 241, the first factor the court should consider in determining whether a breach of contract is material is the extent to which the injured party may be expected to be deprived of a reasonably expected benefit. Russell v. Ohio Outdoor Advertising Corp. (1997),122 Ohio App.3d 154, 157-58.[1] The court's finding here supports the conclusion that CCP was not deprived of a reasonably expected benefit. Therefore, the court did not err in finding no material breach of the amended lease agreement.[2]
 Tortious Interference with Prospective Contract.
 {¶ 38} Second, CCP claims the trial court erred by holding that CCP tortiously interfered with a contract or business relationship of plaintiffs'. The claim plaintiffs asserted in the amended complaint alleged that the individual partners of CCP tortiously interfered with the contractual relationship between plaintiffs and CCP by procuring a breach of the lease. However, plaintiffs' post-trial brief argued that CCP interfered with the prospective landlord-tenant relationship between the Schwartzes and Willow. This was the theory upon which the court found CCP liable.
 {¶ 39} Whichever theory one adopts, plaintiffs were not entitled to judgment on their tortious interference claim. "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." A B Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. Constr. Trades Council (1995), 73 Ohio St.3d 1, 14 (emphasis added). By definition, this tort involves interference with a relationship among third parties; one cannot "interfere" with a relationship among oneself and another party. Thus, the individual partners of CCP could not tortiously interfere with the lease, because they were parties to it.
 {¶ 40} Furthermore, as a matter of law, Willow cannot claim that CCP interfered with a prospective contractual relationship between Willow and the Schwartzes. Willow's tortious interference claim effectively asserts that CCP was obligated to sell its property to the Schwartzes in order to assist in the creation of a landlord-tenant relationship among the Schwartzes and Willow. As a matter of law, the failure or refusal to transfer property rights to another does not constitute interference with a prospective contractual relationship between the proposed purchaser and a current tenant. It is, at most, a breach of the contract to sell.
 {¶ 41} Accordingly, we sustain the second assignment of error and reverse the judgment in favor of plaintiffs on their claim for tortious interference, including the award of compensatory and puntive damages and attorney's fees. This conclusion renders moot CCP's sixth assignment of error to the extent it challenges the award of compensatory damages for tortious interference, and the seventh assignment of error, challenging the award of punitive damages and attorneys' fees.
Specific Peformance of the Option.
 {¶ 42} In its third assignment of error, CCP claims the court erred by ordering specific performance of the option. CCP argues, first, that the Schwartzes made a counteroffer on terms materially different from the terms of the option and therefore repudiated it. In its findings of fact and conclusions of law, the common pleas court determined that the alleged "counteroffer" was actually an offer by Royal to purchase the real estate and assets which CCP leased to Willow, not a counteroffer to the option. There is substantial competent, credible evidence in the record supporting this conclusion. Therefore, Royal's offer did not affect the Schwartzes' option.
 {¶ 43} Second, CCP asserts the Schwartzes did not meet the conditions precedent of the option because they failed to specify the purchase price in their notice exercising the option as required by paragraph 3. Paragraph 3 requires that the notice of the exercise of the option "will specify the purchase price determined in accordance with paragraph 1." Notably, paragraph 1 does not contain any method for determining the purchase price.
 {¶ 44} Although paragraph 3 is ambiguous,[3] we need not resolve the ambiguity here. The inclusion of a proposed purchase price in the exercise of the option is not a material term because it does not serve any function. The seller is not required to accept the proposed price, nor does the proposal serve as a starting point for negotiation or appraisal. The actual purchase price is determined by appraisal. Accordingly, the common pleas court correctly found that "[o]missions or defects, if any, in the notice of exercise are not so vital nor important to the option so as to defeat the purpose of the Option, and the Schwartzes notice substantially complied with the terms of the option."
 {¶ 45} CCP alternatively claims the option was void because there was a default under the terms of the lease. We previously found no material breach of the lease.[4] Therefore, we reject this argument as well, and overrule the third assignment of error.
Reformation of Option.
 {¶ 46} CCP's fourth assignment of error contends that the common pleas court "reformed" the terms of the option by (a) specifying a date for closing the sale of the property, (b) including a certificate of need among the assets subject to the option, and (c) changing the appraisal process from that specified in the option.
 {¶ 47} Closing Date. The option provided that "[c]losing will occur * * * at such time and date as is agreed upon by the Grantor and the Grantee, but in any event, no later than one hundred eigth [sic] (180) days after the last date permitted for delivery of notice of exercise by Grantee to Grantor." The last date for delivery of notice of exercise is "one hundred eighty (180) days before the termination of the Lease as specified in paragraph 2 of the lease." The common pleas court determined that this provision required the parties to close within a reasonable time after the notice of exercise, and determined that a reasonable time would be 90 days. CCP contends that this determination is erroneous because, under the terms of the option, the parties must agree on the closing date; if they do not agree, CCP claims, then the closing must be on the last day of the lease. The common pleas court found that this construction would allow an unreasonable result in that CCP could delay closing until the last day of the lease simply by refusing to agree to a closing date.
 {¶ 48} We agree with the common pleas court's analysis. An "agreement to agree" on particular terms in the future implies that the parties will negotiate in good faith. Cf. R.C. 1301.09. CCP refused to negotiate at all. The court therefore did not abuse its discretion by determining that closing should occur within a reasonable time and determining what a reasonable time should be.
 {¶ 49} Certificate of Need. CCP argues that the court erred by including the certificate of need among the assets which were to be sold to the Schwartzes pursuant to the option. In its final judgment, the court ordered CCP and its partners to convey to the Schwartzes all of their right, title and interest in the "Willow Park Assets," which it defined as "the property subject to the Willow Park Lease, including the real estate, furniture, fixtures, and certificate of need used in the operation of the business." CCP contends that the only assets subject to the option are the real estate, furnishings, fixtures, equipment and tools, and these do not include the certificate of need.
 {¶ 50} CCP did not bring this issue to the trial court's attention during the proceedings below, and therefore waived this objection. This issue arose when the common pleas court entered its February 9, 1998 opinion following trial, in which it ordered that "Plaintiffs, therefore, are entitled to specific performance of the Option to Purchase as prayedfor in Count No. 1 of the Amended Complaint." (Emphasis added.) The amended complaint prayed for an order directing CCP to tender to the Schwartzes "the real estate, equipment, fixtures, certificate of need, and other assets of Willow Park Convalescent Home, at a price determined in accordance with the option agreement." (Emphasis added.) CCP apparently accepted that the court's order meant the certificate of need was an asset subject to the option, and obtained appraisals which included the certificate of need in the valuation. Although CCP did file two motions to revise the court's decision, findings and conclusions regarding the tortious interference claim, those motions did not address the inclusion of the certificate of need among the assets to be transferred.
 {¶ 51} In fact, the only references we found to this issue in the voluminous record in the case are a few parenthetical remarks, footnotes and short side comments in briefs and motions concerning other issues. At no point in those motions did CCP ask the court to rule that the certificate of need was not subject to the option. These barely discernable, glancing notes were insufficient to bring the matter to the court's attention and demand a ruling.
 {¶ 52} "[A]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Williams
(1977), 51 Ohio St.2d 112, 117. "`[T]he true relation of court and counsel * * * enjoins upon counsel the duty to exercise diligence and to aid the court rather than by silence mislead the court into commission of error.'" Id. (quoting State v. Driscoll (1922), 106 Ohio St. 33). Therefore, we find CCP has waived this argument.
 {¶ 53} Appraisal Process. CCP argues the court erroneously "reformed" the contractual procedure for appraisal of the assets. Apparently, CCP complains that the court ordered the parties to obtain appraisals under two different valuation methods, resulting in a total of six appraisals.
 {¶ 54} The option did not specify the method by which the property was to be appraised, and the parties disputed this issue. The court required the parties to submit complete sets of appraisals using both valuation methods, then determined which one was appropriate, valuing the assets by averaging the three appraisals using that method. It did not "reform" the lease by doing so.
 {¶ 55} Accordingly, we overrule the fourth assignment of error.
Valuation of Assets.
 {¶ 56} In its fifth assignment of error, CCP argues that the court erred by determining the sale price of the property by averaging appraisals of the "leased fee" value of the property rather than the fee simple value. CCP claims it was unfair to discount the value of the property based on the encumbrance represented by the lease, because the sale of the property would place the Schwartzes in full control of both sides of the lease so that the property would not in fact be encumbered. CCP also argues that the option required CCP to convey a fee simple to the Schwartzes.
 {¶ 57} Substantial evidence in the record supports the common pleas court's conclusion that the sale of assets was subject to Willow's lease. First, the option expressly provides for a pro rata adjustment of rent to the date of transfer. This indicates that the parties expected that the lease would continue after the property was sold. Furthermore, Willow is a corporation independent of the Schwartzes; the Schwartzes' purchase of the property will not result in a merger of the lessor's and lessee's interest in the property. There is nothing in the lease indicating that it will be terminated if the Schwartzes purchase the property.
 {¶ 58} The court did not err by valuing the property subject to the lease, because the parties intended for the lease to continue after the transfer of the property to the Schwartzes. Therefore, the fifth assignment of error is overruled.
Setoff of Rent Against Purchase Price.
 {¶ 59} In its sixth assignment of error,[5] CCP argues that the common pleas court erred by determining that the Schwartzes should receive a setoff against the purchase price in the amount of the rents they would have received if the property has been transferred to them within a reasonable time after they exercised their option. Essentially, CCP complains that the court compensated plaintiffs for the delay but did not also compensate CCP by allowing it interest on the sale price from the date the transfer should have occurred.
 {¶ 60} "`[W]hen a decree for specific performance in the sale of real estate is granted to the purchaser he is entitled to be put in the position he would have been in had the contract of sale and purchase been carried out on the date agreed upon.'" Sandusky Properties v. Aveni
(1984), 15 Ohio St.3d 273, 274 (quoting Hellkamp v. Boiman (1970),25 Ohio App.2d 117, 122). The court's award accomplishes this result. Therefore, the court did not abuse its discretion by awarding the Schwartzes the rent they would have received from Willow had the property been transferred to them when it should have been.
Summary Judgments.
 {¶ 61} CCP's eighth assignment of error asserts that the common pleas court improperly entered summary judgment for plaintiffs and the Bank One defendants. First, CCP urges that the court erred by entering judgment for plaintiffs on four counts of the counterclaim which, CCP claims, were neither tried during the bench trial nor addressed in plaintiff's motion for summary judgment. In addition, CCP claims the court erred by entering summary judgment for plaintiff on Counts XIX and XXIV of the counterclaim, and for the Bank One defendants on the third party claims.
Unlitigated Counterclaims Against Plaintiffs.
 {¶ 62} The scope of the partial judgment entered by the common pleas court following the bench trial is not entirely clear. Although the court's initial opinion indicated that the court was granting judgment to plaintiffs on all the counterclaims against them, the court's findings and conclusions only addressed the complaint and counts I to XI of the counterclaim, leaving open the disposition of the other counterclaims against plaintiffs.
 {¶ 63} When this court dismissed CCP's prior appeal for lack of a final appealable order, it concluded that there were unlitigated claims against plaintiffs in counts XIX and XXIV, and against the third party defendants. Following the dismissal, plaintiffs moved for summary judgment on Counts XIX and XXIV of the counterclaim, and the court granted this motion. In the final judgment, then, the court entered "judgment" for plaintiffs on all of the counterclaims except counts XIX and XXIV, and "summary judgment" for plaintiffs on those two counts.
 {¶ 64} CCP asserts that counterclaims against plaintiffs were alleged in Counts XX, XXII, XXIII, XXV which were not addressed by the judgment following the bench trial or by the summary judgment, and the court erred by entering final judgment on them.
 {¶ 65} Plaintiffs argue that this court's dismissal of the previous appeal and its determination that Counts XIX and XXIV remained pending against plaintiffs was the "law of the case" and therefore binding on the trial court. We disagree. The law of the case doctrine is not a rule of substantive law but is a rule of practice which will not be applied to achieve unjust results. See Nolan v. Nolan (1984),11 Ohio St.3d 1, 3. It would be unjust to bind CCP to a statement in this court's prior dismissal order. First, we note that this court's prior ruling served the very limited purpose of dismissing the case; it did not address the merits. Therefore, the level of review was extremely limited. Second, it was unnecessary for this court to identify the particular pending claims that rendered the prior order interlocutory in order to dismiss the appeal. It would be unfair to bind CCP to an unnecessary statement made in a limited decision by this court. Therefore, we will review each of the four counterclaims that CCP alleges were not properly decided by the common pleas court.
 {¶ 66} Count XX demanded a declaratory judgment that CCP was not in breach of any agreements with Bank One and/or Bank One Trust. There was no claim against plaintiffs in this count. Therefore, the summary judgment entered for the Bank One defendants disposed of this count.
 {¶ 67} Counts XXII claims that plaintiffs induced Bank One to violate the terms of its agreements with CCP, and therefore tortiously interfered with their contractual relationship. This claim was rendered moot by the order granting summary judgment to Bank One, which determined that Bank One had not violated its agreements with CCP.
 {¶ 68} Count XXIII claims plaintiffs tortiously interfered with the business relationship between CCP and Bank One. This issue was not addressed by the plaintiff's motion for summary judgment following dismissal of the prior appeal,[6] nor was it rendered moot by the court's rulings on other claims.
 {¶ 69} Count XXIII alleges that plaintiffs "wrongfully and intentionally" "disrupted" an "economic relationship" among CCP and Bank One which held the "probability of future economic benefits to" CCP. Although this claim alleges an extremely tenuous prospective relationship between CCP and Bank One, it is well settled under Ohio law that a claim of intentional and improper interference with another's prospective contractual relation is actionable. See, e.g., Brookeside Ambulance,Inc. v. Walker Ambulance Service (1996), 112 Ohio App.3d 150, 155-56; Restatement of the Law 2d, Torts (1979), Section 766B. "[I]nterference with a continuing business or other customary relationship not amounting to a formal contract" is included. Id. at comment c. The court erred by entering judgment for the plaintiffs on this claim without evidence or argument, so we must reverse and remand for further proceedings on this claim.
 {¶ 70} Finally, Count XXV claimed plaintiffs and the Bank One defendants breached financing and security agreements of which CCP claimed to be a third party beneficiary. Bank One sought and obtained summary judgment on this claim on the ground that CCP was not an intended third party beneficiary of these agreements as a matter of law. This holding moots CCP's claim against plaintiffs for breach of the financing and security agreements.
Counts XIX and XXIV.
 {¶ 71} CCP claims the court erred by awarding summary judgment to plaintiffs on counts XIX and XXIV of the counterclaim "without evidence". The order granting summary judgment to plaintiffs found that these claims were moot.[7] If a claim is moot, no evidence is needed for the court to enter judgment against the claimant. Therefore, we reject this argument.
Summary Judgment for Bank One Defendants.
 {¶ 72} CCP argues that the court improperly granted summary judgment in favor of the Bank One defendants "without evidence." On its face, the court's judgment entry indicated that the court was relying on the evidence submitted in connection with the summary judgment motion as well as the court's findings from trial. Therefore, CCP's argument does not accurately reflect the basis of the court's judgment.
 {¶ 73} CCP attempts to incorporate by reference the arguments contained in its brief in opposition to the Bank One defendants' motion for summary judgment. "[T]he Rules of Appellate Procedure do not permit parties to `incorporate by reference' arguments from other sources."Kulikowski v. State Farm Mut. Auto. Ins. Co., Cuyahoga App. No. 80102/80103, 2002 Ohio 5460, at ¶ 55. "This is nothing more than an attempt to circumvent the page limits imposed by Loc.App.R. 16(A). Pursuant to App.R. 16, arguments are to be presented within the body of the merit brief. Therefore, we will disregard any argument not specifically and expressly addressed in the appellate briefs." Powers v.Pinkerton, Inc., Cuyahoga App. No. 79333, 2001 Ohio 4119.
Findings and Conclusions.
 {¶ 74} Finally, CCP contend the court erred by issuing findings of fat and conclusions of law in violation of Local Rule 19. CCP urges that pursuant to the Local Rule, the court should have directed CCP to prepare proposed findings and conclusions.
 {¶ 75} The local rule merely allows the court to direct the party making the written request for findings and conclusions to submit a proposal. It does not require the court to do so. Therefore, we overrule the ninth assignment of error.
Conclusion.
 {¶ 76} For the foregoing reasons, we reverse the judgment in favor of plaintiffs on their tortious interference claim and enter judgment for CCP on that claim. We also reverse the judgment in plaintiffs' favor on CCP's counterclaim for tortious interference with CCP's business relationship with Bank One and remand for further proceedings on that claim. We affirm the declaratory judgment that Willow did not materially breach its lease obligations and the concomitant order enjoining CCP from interfering with Willow's quiet enjoyment of the leased premises. We also affirm the judgment in favor of plaintiffs on CCP's claim for breach of the lease and guaranty. We affirm the judgment ordering specific performance of the option agreement. Finally, we affirm the judgments in favor of plaintiffs and the Bank One defendants on the remaining counterclaims and third party claims.
Affirmed in part, reversed in part and remanded for further proceedings.
This cause is affirmed in part and reversed in part and remanded for further proceedings as to Count XXIII of the counterclaim only.
It is, therefore, considered that said appellants recover of said appellees their costs herein.
It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J. and ANNE L. KILBANE, J. CONCUR.
[1] {¶ a} "The Restatement sets forth five factors to consider in determining whether there has been a material failure of performance:
{¶ b} `(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
{¶ c} `(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
{¶ d} `(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
{¶ e} `(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
{¶ f} `(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." Restatement of the Law 2d, Contracts (1981) 237, Section 241.'" Russell, 122 Ohio App.3d at 158.
[2] Furthermore, the court's finding supports the conclusion that CCP did not suffer any damages as a result of a breach of the lease by plaintiffs.
[3] We disagree with the common pleas court's finding that paragraphs 2 and 3 of the option were contradictory. Paragraph 2 describes how the purchase price is determined, while paragraph 3 concerns the notice of exercise of the option. These two do not affect one another. However, paragraph 3 is ambiguous because it requires the party exercising the option to specify a price determined in accordance with a non-existent procedure.
[4] CCP also disputes the court's finding that the option's validity was not affected by alleged breaches of the lease of which plaintiffs were notified after the option was exercised. We decline to become mired in this dispute because, having found no material breach, it is irrelevant.
[5] The sixth assignment of error also urges that the court erred by awarding plaintiffs compensatory damages for tortious interference with a prospective contractual relationship. We previously found that the court erred by granting judgment for plaintiffs on this claim, so the award of compensatory damages, punitive damages, and attorney's fees has been reversed.
[6] Count XXIII was addressed in a motion for summary judgment plaintiffs filed before the previous appeal was dismissed. However, plaintiffs withdrew this motion.
[7] Count XIX demanded compensatory damages for breach of the lease agreement. However, the court's partial judgment following trial found no material breach of the lease, so this claim was moot. Count XXIV asserted that the Schwartzes were personally liable for "all breaches, violations and tortious conduct of Plaintiffs Royal Manor and/or Willow Park." The court had found no breach, violation or tortious conduct by Royal or Willow for which the Schwartzes could be held personally liable, so this claim was moot as well.